# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

JUARIA JAMELLE RAYMOND,     )
     )
        Plaintiff,     )
     )
vs.     )     Case No. 15-cv-454-TLW
     )
NANCY A. BERRYHILL,[1]     )
Acting Commissioner of Social Security,     )
     )
        Defendant.     )

## OPINION AND ORDER

Plaintiff Juaria Jamelle Raymond seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 10). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## ISSUES

On appeal, plaintiff raises seven points of error.[2] Plaintiff's first argument addresses step three: that the Administrative Law Judge ("ALJ") erred by finding that she does not meet Listing 1.04(A). (Dkt. 14). Plaintiff's next four allegations of error address how the ALJ handled plaintiff's residual functional capacity ("RFC"): (1) that the ALJ failed to include limitations for all of her

---

[1] Effective January 23, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of the Social Security Administration and is substituted as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

[2] Plaintiff raises several arguments that are interrelated; therefore, the Court will group and address plaintiff's related arguments in Step order for simplification. See 20 C.F.R. §§ 404.1520(a); 416.920(a).

severe impairments in the RFC findings; (2) that the ALJ "had a duty to develop the record on the diagnosis of fibromyalgia"; (3) that the ALJ failed to include "pertinent limitations" from her treating physicians when formulating her RFC; and (4) that the ALJ should have found her disabled under a Grid Rule 201.14 when she turned 50 years old. Id. Plaintiff's final two arguments address step five errors: (1) that the vocational expert's testimony is insufficient, in this case, to qualify as substantial evidence to support the ALJ's decision; and (2) that the jobs identified by the vocational expert "do not conform with the RFC given," therefore the Commissioner's step five burden is unsatisfied. Id.

## STANDARD OF REVIEW

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## ANALYSIS

### Step Three – Listing 1.04(A)

Plaintiff argues that the ALJ erred by finding that she does not meet the criteria for Listing 1.04(A). (Dkt. 14). The Commissioner argues that substantial evidence supports the ALJ's step three finding, because plaintiff did not "meet *all* of the specified medical criteria." (Dkt. 15) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original)).

Plaintiff's specific contention is that she "meets Listing 1.04(A) on both the cervical and lumbar spine," relying on records from Don L. Hawkins, M.D., Martin L. Martucci, M.D., and consultative examiner Seth Nodine, M.D. (Dkt. 14). Regarding her cervical spine, plaintiff claims that Dr. Hawkins "noted disc herniation at C4-5 and C5-6 with fairly severe foraminal stenosis at both levels," and that he "discusses the additional herniation of the disc with nerve compression and irritation with a gradual worsening over the years to the point it is visible on the MRI." Id. Regarding her lumbar spine, plaintiff argues that Dr. Nodine was the "only doctor to really evaluate [her] back," noting an absence of deep tendon reflexes on the right side, right side positive straight leg raise testing, and decreased range of motion. Id. She further claims that "[m]edical records from her primary care physician indicate[ ] complaints of numbness and pain in [her] legs." Id.

This Court's practice, in line with that of the Tenth Circuit, is "to take a lower tribunal at its word when it declares that it has considered a matter." Hackett, 395 F.3d at 1173. The Court finds no reason to deviate from this practice here. The ALJ thoroughly discussed plaintiff's medical records throughout the decision, and clearly explained his reasoning for the weight afforded to each opinion. (R. 21-30). Specific to this argument, the ALJ stated that he considered plaintiff's impairments under Listing sections 1.00, *et seq.* (Musculoskeletal System) and 12.00, *et seq.* (Mental Disorders), and he concluded that "[d]espite [plaintiff's] combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source

has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (R. 24).

The requirements of Listing 1.04(A) are:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including cauda equina) or the spinal cord,

> With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

The Commissioner argues that contrary to her claims, plaintiff failed to show "evidence of nerve root compression with motor loss … accompanied by sensory or reflex loss and, … positive straight-leg raising test (sitting and supine)." (Dkt. 15 at 4). The Commissioner notes that the ALJ discussed records from Dr. Hawkins showing that he found "electromyography ('EMG') and nerve conduction studies" that "did not show any specific radicular symptoms or nerve compression from the cervical spine (Tr. 366)." (Id.; R. 27, 366). Records from Dr. Hawkins, discussed by the ALJ, reveal that he specifically stated, upon review of an MRI scan performed April 20, 2009, that plaintiff's "greatest degree of pathology remained at C4-5 and C5-6" noting she "has a diffuse amount of calcified and protruding disc herniation offset from the subluxation of C4-5 and C5-6, posterior spurring, and fairly severe foraminal stenosis at both levels," with "some degree of stenosis at C6-7, some bulging of the disc, but no compression of the nerve structures." (R. 27, 366).

On January 13, 2012, Jeffrey Pardee, M.D. examined plaintiff in connection with her Workers' Compensation claim, reviewed plaintiff's entire medical file up to that point, and performed his own examination. (R. 464-74). The ALJ discussed Dr. Pardee's opinion that plaintiff walked without a limp, did not appear stiff, and was able to heel and toe walk. (R. 28). The ALJ also discussed Dr. Pardee's findings that plaintiff had "range of motion deficits of the cervical spine and right arm," yet her "upper extremity reflexes and sensation [were] preserved," straight-leg raise testing was negative, her lumbar spine range of motion was normal, and she displayed no atrophy in her thighs or calves. (R. 28, 470-71). Dr. Pardee opined that plaintiff "was not permanently disabled and that she could return to the workforce at any time working as a guidance counselor." (R. 28, 473). The ALJ gave Dr. Pardee's opinion, among others, great weight. (R. 29).

The ALJ also discussed plaintiff's May 30, 2012 consultative examination with Dr. Seth Nodine. The ALJ noted that Dr. Nodine found decreased range of motion of plaintiff's lumbar spine; that straight-leg raise testing was negative on the left side yet positive on the right; but that she retained a normal gait with full range of motion and strength of her left shoulder. (R. 28, 647-53). The ALJ further noted plaintiff's subjective comments to Dr. Nodine that she used her left arm and hand to compensate in her activities of daily living, and could write with either hand. (R. 28, 647).

While this evidence does indicate that plaintiff experiences pain and some difficulties from her impairments, it fails to demonstrate that her impairments rise to the level of a Listing.

**RFC Limitations**

Plaintiff's next four allegations of error address how the ALJ handled her RFC. She argues: (1) that the ALJ failed to include limitations for all of her severe impairments in the RFC findings, specifically for her headaches and degenerative disc disease; (2) that the ALJ "had a duty to develop the record on the diagnosis of fibromyalgia"; (3) that the ALJ failed to include "pertinent

limitations" from her treating physicians when formulating her RFC, specifically limitations on her right arm, shoulder, and/or hand; and (4) that the ALJ should have found her disabled under a Grid Rule 201.14 when she turned 50 years old. (Dkt. 14).

### Severe Impairments

Plaintiff argues that the ALJ should have accepted her subjective statements that she "would require up to two hours a day to lay down" to relieve her headaches, and should have included postural limitations for her neck impairment in her RFC. (R. 14). The responsibility of determining a claimant's RFC, an administrative finding, not a medical one, rests with the ALJ. Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). All that is required of an ALJ at step two is to determine whether a claimant suffers from severe impairments. Oldham v. Astrue, 509 F.3d 1254, 1256 (10th Cir. 2007). Finding severe impairments at step two "does not require an ALJ to find at step five that the claimant did not have the residual functional capacity to do any work." Id. at 1257.

Here, the ALJ discussed plaintiff's testimony and medical records regarding headaches and neck pain, and ultimately concurred with the opinions of her treating physicians, who continually released plaintiff to light work with restrictions on her right shoulder, giving those opinions "great weight." (R. 25-30). Throughout the record, plaintiff mentioned that her pain regimen controlled her symptoms, and reported to Dr. Martucci, her pain management physician, that she believed her headaches were caused by a muscle relaxer, Zanaflex, so Dr. Martucci adjusted her medication. (R. 605, 610, 638, 642-43, 727). The ALJ limited plaintiff to a reduced light exertional RFC. (R. 24-25). During a January 2012 vocational evaluation with Christy Wilson-Wiles, LCSW, CDMS, CRC, plaintiff reported that she "could do light vacuuming, light laundry, cook, light shopping, and fill the vehicles [sic] gas tank" even though she experienced pain. (R. 28; 488).

6

Plaintiff fails to point to any objective evidence in the record to support her claims that she is more limited than the ALJ's RFC allows. (Dkt. 14). Substantial evidence supports the argument that the ALJ properly considered plaintiff's credible complaints of pain.

**Duty to Develop/Re-contact**

Plaintiff argues that the ALJ should have further developed the record regarding fibromyalgia, re-contacted physicians at her "primary care group, Good Samaritan" to obtain documentation, or sent her for a consultative examination to establish required tender points to confirm a diagnosis. Id. The ALJ's opinion makes it plain that he did not find the treating doctor's notes equivocal, incomplete, or confusing; he simply found them immaterial. Further, an ALJ is no longer required to re-contact a treating source to resolve an inconsistency or insufficiency in the evidence. The regulations currently state that the agency will "try" to resolve an inconsistency or insufficiency in the evidence by taking one or more of four possible actions. 20 C.F.R. §§ 404.1520b(c), 416.920b(c). Recontacting a treating physician is one of the four options, but an ALJ need not even make an effort to resolve an inconsistency if an ALJ can determine whether a plaintiff is disabled based on the existing evidence in a case. §§ 404.1520b(b), 416.920b(b). Here, it is clear the ALJ reviewed the records in question, and found the records from Good Samaritan did not "support the diagnosis of fibromyalgia." (R. 22).

**Treating Physician Limitations**

Next, plaintiff argues that the ALJ failed to include "pertinent" limitations on the use of her right arm imposed by a non-examining agency physician who opined that her right hand could not be used as a "helper." (Dkt. 14 at 3). Plaintiff argues that although the ALJ included limitations in the RFC for her right arm and hand, he should have adopted all of the limitations from this opinion. Id.

The ALJ limited plaintiff's RFC as follows:

The claimant can lift and carry 20 pounds occasionally and 10 pounds frequently with the left hand but **only lift 5 pounds occasionally and less than 5 pounds frequently with the right hand**, with pushing and pulling limitations consistent with the lifting and carrying limitations. The claimant can stand and walk for 6 hours in an 8-hour workday and sit for 6 to 8 hours in an 8-hour workday. She can frequently climb stairs, balance, bend, crouch, stoop and kneel. She can occasionally crawl but never climb ladders, ropes or scaffolding. **She should not work with the right arm away from the body but she can have movement at the wrist or elbow with her arm close to the body.** She can **occasionally finger, handle and feel with the right hand** with unlimited fingering, handling and feeling with the left hand. She can frequently reach in all directions with the left arm.

(R. 24-25) (emphasis added).

To arrive at this RFC, the ALJ specifically discussed treatment notes from Dr. Blackmon (R. 26), Dr. Boone (id.), Dr. Hawkins (R. 27), Dr. Nebergall (id.), Dr. Lorton (id.), Dr. Pardee (R. 28), Dr. Nodine (id.), Dr. Blackstock (R. 28-29), Dr. Chalkin (R. 29), and reports from two vocational evaluations (R. 28). These records all show that plaintiff suffered pain and impairment in the right shoulder; however, contrary to plaintiff's claims, each one opined that plaintiff could return to light duty work with limitations on her right arm, and none opined that plaintiff "must keep the right *hand* at her side." (Dkt. 14 at 4) (emphasis added). Dr. Boone opined that plaintiff could return to light work but should keep her right *arm* "close to the side with a five pound or less lifting restriction" while working. (R. 353).[3] Dr. Blackmon opined that plaintiff had reached maximum medical improvement, and placed "permanent restrictions of no use of her right shoulder down to her elbow, which is her arm. She can use her forearm, which is from her elbow to her wrist, and can use her hand." (R. 316). Dr. Robert Nebergall of The Spine and Orthopedic Institute, performed a right shoulder manipulation on April 14, 2011, and noted that plaintiff would need to "remain light duty." (R. 388). Plaintiff's forward flexion was 100 degrees actively and

---

[3] This is the same record that plaintiff argues supports the agency physician's opinion limiting the use of her right arm. (Dkt. 14 at 4). Plaintiff's contention regarding Dr. Boone's restriction is misleading.

passively. Id. Plaintiff presented for a follow up visit one month later, and Dr. Nebergall noted that she had recently started physical therapy, and kept her on "light duty." (R. 387).

Dr. Pardee examined plaintiff and reviewed her records to date on January 10, 2012. (R. 464-74). He found "no impairment of either arm or elbow, regardless of causation. [Plaintiff] indicate[d] that pain in her arms and elbows [wa]s there by radiation from the shoulders, and neck only." (R. 473). He further opined that plaintiff "is capable of gainful employment," and found "no contraindication to [plaintiff] returning to the work force, at any time, working as a guidance counselor." Id. Dr. Martucci noted on April 2, 2012 that plaintiff had "movement in all four extremities." (R. 605). The ALJ afforded great weight to the majority of these consistent treating physician opinions. (R. 29).

The ALJ also discussed the agency medical consultants' opinions in question, and found that the "evidence [as a whole] does not support the claimant cannot use her right hand as a helper." (R. 29). This conclusion is supported by substantial evidence as discussed above, and is not ambiguous.[4]

**Grid Rule 201.14**

Plaintiff argues that the ALJ should have found her disabled under Medical-Vocational Grid Rule 201.14 "no later than August of 2011," when she reached the age of 50. (Dkt. 14 at 6-7). Plaintiff says that since she is "a high school graduate," with "no transferable skills, and a

---

[4] Plaintiff makes a one sentence argument in the context of her Step 5 allegations of error that the opinion of H. Wade Bedwell, Ph.D. further supports a finding of disability. (Dkt. 14 at 9). Dr. Bedwell found plaintiff "would need employment at the less than sedentary level of exertion," due to both her physical condition and "psychological overlay." (R. 484). The ALJ discussed Dr. Bedwell's opinion, found it inconsistent with the evidence as a whole, and gave it "little weight" based on his finding that Dr. Bedwell "seemed to accept as true most, if not all, of what the claimant reported." (R. 22). Further, the ALJ discussed evidence that contradicts Dr. Bedwell's opinion. Id. The Court finds no error in the ALJ's treatment of Dr. Bedwell's opinion.

sedentary or severely restricted light range of work available," Grid Rule 201.14 is proper, and the ALJ erred by not applying it.[5] Id.

Grid Rule 201.14 pertains to a maximum RFC limited to sedentary work, and as discussed, the ALJ found plaintiff retains an RFC for a reduced light exertional RFC. (See supra at 8). The Court finds no error in the ALJ's RFC determination, as it is supported by substantial evidence. The ALJ properly found that since plaintiff was "closely approaching advanced age" (defined as age 50-54), "the Medical-Vocational Rules … support[] a finding that [plaintiff] is 'not disabled,' whether or not [she] has transferable job skills (See SSR 82-41 and 20CFR Part 404, Subpart P, Appendix 2)." (R. 30). The proper Grid Rule range for plaintiff's reduced light RFC, for someone closely approaching advanced age with a high school education, is 202.13 (unskilled), 202.14 (skills not transferable), and 202.15 (skills transferable), and each directs a finding of "not disabled." See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.13-15.

**Step Five Findings**

Plaintiff's final two allegations of error involve the ALJ's findings at step five of the sequential evaluation process. Specifically, plaintiff argues that the vocational expert's testimony is insufficient, in this case, to qualify as substantial evidence to support the ALJ's decision, and that the jobs identified by the vocational expert "do not conform with the RFC given," therefore resulting in erroneous findings about plaintiff's ability to perform other work at step five. (Dkt. 14 at 7-11). Plaintiff also argues that the vocational expert testified that the "loss of use" of plaintiff's right arm (which plaintiff arbitrarily describes as follows: the "ability to use the right hand is compromised by having to keep it at one's side") would preclude all identified jobs without modifications, and that the evidence supports such a finding. Id. Additionally, plaintiff challenges

---

[5] Plaintiff does not offer any support or authority for this basic allegation of error.

the skill level of each job identified by the vocational expert, cashier, fast food worker, and mail clerk, claiming that each is outside of her "knowledge, skills[,] and experience." Id. at 10.

The Commissioner argues that the ALJ did not err in assessing plaintiff's RFC; therefore, there was no error at step five. (Dkt. 15). Specifically, the Commissioner argues that "the ALJ was not bound by a hypothetical from Plaintiff's attorney that contained unaccepted limitations, i.e., that restricted the individual to no use of the right hand or arm and no use of the right hand as a helper (Tr. 85-86)." Id. at 9. The Commissioner further argues that all three jobs identified by the vocational expert are unskilled (SVP 2), and "[t]o the extent that Plaintiff is referring to the occupations' General Educational Development ('GED') reasoning levels," that "GED embraces those aspects of *education* (formal and informal) which are required of the worker," not RFC skill level. Id. at 9. See Anderson v. Colvin, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished) (recognizing that GED levels describe "the general educational background that makes an individual suitable for the job," not skill level). The Court finds this argument persuasive.

The ALJ did not err in failing to address the vocational expert's testimony regarding job modifications. As noted by the Commissioner, the ALJ is under no obligation to accept unsupported limitations; therefore, he was also under no obligation to consider testimony from the vocational expert based on those unsupported limitations. Further, because the ALJ's RFC findings "are adequately reflected in the ALJ's hypothetical inquiries to the vocational expert, the expert's testimony provided a proper basis for adverse determination of this case." Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993).

This reasoning extends to plaintiff's argument regarding the skill level of the identified jobs. All three jobs identified by the vocational expert have a reasoning level of two, which represents unskilled work, which is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a);

416.968(a). Plaintiff testified that she has a high school education. (R. 52). The record contains no evidence, and plaintiff cites none, that she does not have the level of skill necessary to perform the jobs of cashier, fast food worker, or mail clerk.

Further, any physical limitations that plaintiff alleges preclude these jobs due to her alleged inability to use her right hand have been discussed at length; plaintiff does not have a "less than sedentary" RFC[6] (dkt. 14), and substantial evidence supports the ALJ's findings that she is able to use her right hand with her arm close to her body. To resolve any question regarding plaintiff's physical ability to perform the jobs, the ALJ properly consulted the vocational expert. See SSR 83-12, 1983 WL 31253 at *3.

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 15th day of March, 2017.

T. Lane Wilson
United States Magistrate Judge

---

[6] Plaintiff again relies on a misrepresentation of the evidence from Dr. Boone to support her argument that she is unable to use her right hand. (Dkt. 14 at 7). This argument is rejected.